### TRAVELERS' INS. CO. v. SMITH et al. (No. 1135.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 10, 1924. Rehearing Denied Nov. 26, 1924.)

**1. Master and servant ⬤⟳373—Compensation claimant need not show disease to be usual result of "personal injury" sustained.**

Notwithstanding Complete Tex. St. 1920, art. 5246—82, subd. 5 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82, subd. 5), defining "personal injury" in Workmen's Compensation Act to include disease naturally resulting from injury, claimant need not show disease of which employee died to be usual and ordinary result of such injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Injury.]

**2. Master and servant ⬤⟳373—Compensation allowed where injury was exciting and efficient cause of disease resulting in death.**

Compensation under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) should be allowed where chlorine gas inhaled by employee in course of employment was the exciting and efficient cause of lobar pneumonia of which he died, though it was not usual result of such injury.

**3. Master and servant ⬤⟳405(4) — Evidence held to sustain finding disease was caused by injury.**

In action to set aside award under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), evidence *held* to sustain jury's finding that pneumonia, of which employee died, was caused by inhalation of chlorine gas at employer's gas plant.

**4. Master and servant ⬤⟳401—Pleading sufficient to show right to compensation in lump sum.**

Pleading of minor claimant under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) *held* sufficient, as against special exception thereto, to show her to be entitled to compensation in lump sum.

**5. Master and servant ⬤⟳386(4) — Lump sum award held not erroneous.**

Where minor claimant under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) was an orphan girl eight years old, without property or means of support, and living with her aged grandmother, who was dependent on her own labor and assistance from a son, lump sum award *held* not erroneous.

**6. Master and servant ⬤⟳386(4)—Court may allow compensation in lump sum to one beneficiary and weekly payments to another.**

Trial court in allowing compensation under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) may allow lump sum to one beneficiary and weekly payments to another.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by the Travelers' Insurance Company against Mrs. Essie Smith and another to set aside an award made under the Workmen's Compensation Act in favor of defendants by the State Industrial Accident Board. From a judgment for defendants, plaintiff appeals. Affirmed.

Wistner & White, of Port Arthur, and J. A. Harrison, of Beaumont, for appellant.

Mooney & Smith, of Woodville, and J. E. Rose, of Port Arthur, for appellees.

HIGHTOWER, C. J. This action was commenced in the district court of Jefferson county by appellant as plaintiff against the appellees to set aside an award made in favor of appellees by the Industrial Accident Board of this state on a claim filed with that board by appellees for compensation as beneficiaries of Earl Smith, deceased, who was the husband of Mrs. Essie Smith and father of Annie Myrle Smith, a girl child eight years of age, who is the other appellee in this case. Earl Smith was an employee of the Gulf Refining Company at Port Arthur, Tex., and while engaged in the discharge of his duties in the course of his employment for that company at its gas plant at Port Arthur, on October 26, 1922, late at night, he was gassed, or inhaled chlorine gas, which was there being manufactured, an explosion of which was caused by some part of the machinery suddenly getting out of order. Deceased was removed from the gas plant to the hospital in an ambulance, as soon as one could be procured, and he remained in the hospital until the 29th of October following, a little over two days, and was then removed to his home. On November 23d following, deceased became very ill and a physician was called to treat him, who found that deceased was at that time suffering with double lobar pneumonia (pneumonia in both lungs), from which disease the testimony shows without dispute he died on the 2d day of December following.

---

The Gulf Refining Company had insured its employees, including deceased, in keeping with the Workmen's Compensation Act of this state, and appellant here was carrying the policy of insurance.

After Smith's death, due notice was given thereof to all parties concerned, and appellees, as Smith's beneficiaries, made claim to appellant for compensation, as provided by the act. Appellant refused the claim and denied liability on the ground that Smith's death was not the result of an injury, or caused by an injury received by him in the course of his employment, as the term "injury" is defined in the Workmen's Compensation Act, and thereupon appellees filed their claim with the Industrial Accident Board, which board, after due proceedings had, made its award in favor of appellees for $15 per week for a period of 360 weeks.

Appellant gave due and proper notice that it would not abide by the award of the board, and in due time filed this suit, as we have stated, to set aside the award.

Upon trial in the district court with a jury, whose verdict consisted of answers to special issues, judgment was rendered in favor of the surviving widow of deceased and her attorneys, and the minor, Annie Myrle Smith, and her attorneys, for $15 per week for a period of 360 weeks, one half of which was awarded to the widow and her attorneys, and the other half to the minor and her attorneys; but the judgment provided that the amount awarded to the minor and her attorneys should be redeemed by appellant in a lump sum, which was fixed by the judgment at $2.240.11, and from this judgment as a whole this appeal is prosecuted.

Appellant has advanced a number of propositions for reversal of the judgment, based upon proper assignments of error, the first of which relates to the trial court's refusal to sustain a special exception interposed by appellant to the pleading; but we will first dispose of the assignments and propositions which go to the merits, and the first of these is that the trial court was in error in refusing to peremptorily instruct a verdict for appellant.

Under this proposition, it is contended by appellant that the undisputed evidence in this case showed that deceased died of a disease known as lobar pneumonia, and it further contends that the undisputed proof showed that lobar pneumonia is not a disease which did in this instance, or could in any instance, result naturally from the inhalation of chlorine gas, and that therefore, under the provision of the Workmen's Compensation Act of this state, the disease of which Earl Smith died was not an injury or personal injury in contemplation of the act, or naturally resulting from an injury or personal injury in contemplation of the act, and that therefore the court should have instructed the verdict in appellant's favor.

The statute defines "injury" or "personal injury" as follows:

"The terms 'injury' or 'personal injury' as used in this act shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom." Article 5246—82, pt. 4, subd. 5, Complete Texas Statutes.

[1, 2] It is true, as contended by appellant, that the undisputed proof in this case shows that lobar pneumonia does not usually and ordinarily result from the inhalation of chlorine gas. This proof was made by all the physicians who testified in the case. None of them, prior to this accident, had ever known or heard of lobar pneumonia resulting from the inhalation of chlorine gas. Some of them testified that in rare instance the inhalation of chlorine gas had resulted in bronchial pneumonia, which is a disease of the bronchial tubes, but not of the lungs. Now, in view of such state of the evidence, appellant contends that the disease of which Earl Smith died was not, and could not be, an injury or personal injury or the natural result of an injury or personal injury, as that term is defined by the statute. Counsel for appellant in this connection earnestly contends that, in order for the disease (lobar pneumonia) of which Earl Smith died to be the natural result of the inhalation of chlorine gas, it was incumbent upon appellees to prove that such disease usually and ordinarily, in the natural course of things, resulted from the inhalation of chlorine gas, and that appellees having failed to make such proof, but on the contrary all the evidence showing without contradiction that the disease of which Smith died was not such a disease as usually and ordinarily, in the natural course of things, resulted from the inhalation of chlorine gas, such injury and disease, though in fact resulting in Smith's death, is not compensable, and the court should have so held and instructed a verdict in its favor. We cannot agree with appellant's able counsel in this contention. To do so would necessarily read into the Workmen's Compensation Act something that was never contemplated by the Legislature in passing the act. In other words, we would have to read into the act one of the essential elements of actionable negligence, that is, the element of proximate cause, before an injury sustained by an employee admittedly in the course of his employment and discharge of his duties would be compensable, and this was never intended by the Legislature, as is manifest in the act from its caption to its conclusion. On the contrary, the act contemplates that all injuries received by an employee in the course of his employment and while in the discharge of his duties, with certain stated ex-

ceptions, shall be compensated, whether such injuries be proximately caused by some act or omission on the part of the employer or not, and that in case of the death of the employee from a disease which is shown to be the exciting and efficient cause of the employee's death, his beneficiaries are entitled to compensation, though they be unable to prove that such death was proximately caused by the injury received, as the term "proximate cause" is used in the law of negligence.

If the evidence as a whole was sufficient to show that the inhalation by Earl Smith of chlorine gas on the night of October 26, 1922, was the exciting and efficient cause of the disease which resulted in his death, then it must be held that Smith's death was caused by an "injury" or "personal injury," as those terms are defined by the statute, and that the appellees, his beneficiaries, are entitled to compensation under the act.

It is not counsel's contention that it is not natural for lobar pneumonia to follow or result from an injury to the lungs; but his contention is, as to the proposition now under discussion, that lobar pneumonia did not naturally result from the inhalation of chlorine gas by Smith, because it was shown without dispute that the inhalation of such gas did not usually and ordinarily, in the natural course of things, affect the lungs, and therefore such an injury could not result naturally in the disease of which Smith died, which was, admittedly, lobar pneumonia, a disease of the lungs. We think that it is a matter of almost common knowledge that any serious injury to the human lungs predisposes those members to the disease of pneumonia, and frequently becomes the exciting and efficient cause of such disease; but whether such be a matter of common knowledge or not, the record in this case abundantly shows that any serious injury to the human lungs predisposes those members to pneumonia and becomes the exciting and efficient cause of that disease. By the word "naturally," as used in the statute, it is not meant that the disease which is shown to have attacked the victim of the accident is such disease as usually and ordinarily follows the accident; but it was only meant that the injury or damage caused by the accident is shown to be such that it is natural for the disease to follow therefrom, considering human anatomy and the structural portions of the body in their relations to each other.

Counsel for appellant has not been able to cite in his brief any authority of this or any other state supporting his contention in this connection, and we have been unable to find any, after much independent investigation. The only case cited by counsel for appellant as sustaining his contention in this connection is Borgsted v. Shults Bread Co., 180 App. Div. 229, 167 N. Y. S. 647. We have read that case carefully, and cannot see that it supports counsel's contention to any extent. The vital point for determination by the court in that case was whether a claimed total disability to the employee resulted from an injury to his leg, or whether the total disability was wholly independent of the injury. The employee in that case claimed compensation under the Workmen's Compensation Act of New York for an injury sustained to his leg, and further claimed that by infection of the wound he was caused to go totally blind. The insurer denied that his blindness was caused to any extent by the injury to the leg, but, on the contrary, contended that it was the result of a disease known as syphilis. The proof in the case showed, as the court held, that the injury to the leg had no connection with the blindness, but that, on the contrary, the evidence showed without dispute that syphilis alone affected the claimant's eyes. That was all that was decided in the case.

In a supplemental brief filed by counsel for appellant in this case, a number of other cases are cited as supporting his contention in this connection; but upon examination we find that nearly all of them are cases in which recovery was sought on the ground of negligence, and some of them are cases where accident insurance policies were under construction. None of them have any relevancy, in our opinion, to counsel's contention here.

It follows from what we have said that we are of the opinion that the court was correct in refusing to peremptorily instruct the verdict for appellant in this case for the reason urged in this connection by appellant.

[3] Appellant's next contention as to the merits is, in substance, that the court was in error in declining to peremptorily instruct a verdict in its favor, for the reason that the undisputed proof showed that the disease, lobar pneumonia, of which Earl Smith admittedly died, was not caused to any extent by the accident—the inhalation of the chlorine gas—but that the disease of which he died was wholly independent and disconnected from that accident, and therefore there was no liability on appellant's part. In keeping with our custom where we affirm the judgment as to issues of fact, we shall not go at length into a discussion of the testimony in disposing of this contention.

The evidence was sufficient to show that Earl Smith received or inhaled a sufficient quantity of chlorine gas to render him almost speechless at the time of the accident, and so weakened him physically that he had to be assisted by two men from the gas room to the ambulance by which he was carried to the hospital, and that he was there carried from the ambulance on a cot into the

hospital, where he remained, as we have stated, two days. He was unable on the way to the hospital to speak above a whisper, and was very weak when he was left at the hospital. There was evidence to show that when he reached home after being discharged from the hospital, he was quite weak and nervous and still suffering from the effects of the gas. Three members of his family, that is to say, his mother, his sister, and his wife, testified that when he got home from the hospital he was coughing, and that this kept up almost continuously to the time he was stricken with pneumonia, a period of some three weeks, and the testimony of these relatives also showed that Smith was spitting blood from his lungs almost continually from the time he got home from the hospital until his death. Dr. Gibson, one of the physicians in the case, also testified that on one or two occasions while treating Smith for pneumonia, he found him suffering from hemorrhages of the lungs—spitting blood—which were more or less severe. Appellant introduced books which showed that Smith came back to work at the gas plant three days after he was discharged from the hospital, and that he worked continuously up to the 23d of November, when he was stricken, with the exception of two or three days. The testimony of Smith's mother, sister, and wife was to the effect that he did not go back to work at the gas plant for a week or more after coming home from the hospital, and that he was sick and weak and unable to do so during that time, and that when he did go back to work at the gas plant, he had to ride in an automobile instead of walking, as he had theretofore, on account of his weakened condition, in consequence of the gassing. One of Smith's coemployees in the gas plant testified, in substance, that when Smith came back to work witness noticed that he was not at himself and that he was coughing more or less violently during the time that he was working at the gas plant after his return.

Dr. Gibson testified, as a physician who was acquainted with the history of Smith's injury and condition, substantially that in his opinion the pneumonia which attacked Smith on the 23d of November after the injury on the 26th of October before was caused by the inhalation of the chlorine gas. In other words, it was his opinion, stated in substance, that the inhalation of chlorine gas by Smith at the plant on the evening of October 26th was the exciting and efficient cause of the disease, lobar pneumonia, which attacked Smith on November 23d following and resulted in his death on December 2d thereafter. Four of the physicians who testified for appellant in the case testified, in substance, that in their opinion the chlorine gas inhaled by Smith had no connection with the disease of which he died, and

that his death was therefore a natural death, caused by that disease. All the physicians admitted, however, that chlorine gas is a powerful irritant, and that the extent of its effect upon the respiratory organs or other portions of the body depends upon the extent to which the victim was exposed to it. The proof showed that at the time of the accident Smith was in a closed room, and that the room, when the machinery broke or stopped, became "filled," as some of the witnesses stated, with chlorine gas. How long Smith was thus exposed to the gas was not definitely shown, but, as we have stated, when he was found he was practically speechless, and remained so for the length of time as we have stated. Now, it is true that all of appellant's physicians testified, in substance, that chlorine gas would not, in their opinion, affect the human lung, but had, in rare cases, affected the bronchial tubes, and that bronchial pneumonia rarely, if ever, resulted in lobar pneumonia. This is, substantially, the testimony in the case, and we think that it raised the issue for the jury's determination as to whether the pneumonia of which Smith died was caused by the inhalation of the chlorine gas, as claimed by the appellees, and that the evidence was sufficient to sustain the jury's finding that the disease of which Smith died was so caused.

This overrules all of appellant's propositions that the evidence was insufficient to warrant the jury's verdict in this case, and also overrules appellant's contentions that the court was in error in submitting the issue of the cause of Smith's death to the jury.

[4] Appellant further contends in this court that the pleading of the minor, Annie Myrle Smith, was insufficient as against the attack made by its special exception to show that she was entitled to judgment for a lump sum payment, and that the evidence adduced in connection with such defective pleading was also insufficient to show that she was entitled to judgment for a lump sum. The substance of the minor's petition in that connection is that she is a girl child eight years of age; that both her mother and father are dead (she being a child by Smith's first wife); that she has no money, no property, and no means of support of any kind; that she had been compelled to employ counsel to prosecute her claim in this case, and that the amount awarded to her would have to be divided with her counsel; that it would be a hardship and injustice to her if only the ordinary weekly payments under the statute were allowed her. We think that this pleading was sufficient as against appellant's special exception attacking it.

[5] Now as to the evidence in this connection, it was, in substance, as follows: This

266 S.W.—37

minor was living with her grandmother at the time of Smith's death, and is still so living. She had been living wih her grandmother since she was about three years of age, or shortly after her own mother's death. Her grandmother is an old lady, who has no money, property, or means of support besides her own labor and such assistance as is given her by a son. The minor has no property, money, or other means of support, and is wholly dependent for her support, maintenance, and education upon her grandmother. Such being the facts, we cannot say that the judgment in this case compelling appellant to redeem its liability as to this minor by a lump sum payment is erroneous. It rested largely in the discretion of the trial court, as all the decisions hold, and we cannot say that that discretion was abused.

[6] Appellant further contends that the judgment is erroneous and should be reversed as a whole because, in substance, there is no authority in law for a judgment awarding a lump sum payment to one beneficiary and weekly payment to another. Appellant has cited no authority supporting this contention, and we have found none, and can see no reason underlying it. True, the compensation comes to all the beneficiaries from the same source, but their circumstances and conditions may be so radically different as to require that one of them should be paid a lump sum and others only compensated weekly. And in this connection, disposing of a further contention by appellant, it may be said that although there is a provision in the act that where the weekly payments are not deemed sufficient, that the amount of such payments may be increased by diminishing the number of weeks in which to be paid, yet it does not follow, because there is such provision, that the trial court may not, in the exercise of its sound discretion, cause the insurer to redeem its liability by payment in a lump sum.

This, in effect, disposes of all of appellant's contentions, and it follows that we are of opinion that the judgment should be affirmed, and it has been so ordered.